UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

ABASS TOURE,

               Plaintiff,

           against

THE CITY OF NEW YORK, POLICE OFFICER
ANDREW AIELLO (Shield No. 21442), POLICE
OFFICER JESSE ZALEWSKI (Shield No. 16876),
POLICE OFFICER SHELDON ELLIOTT
(Shield No. 21027), POLICE OFFICER CHRISTIAN
RODRIGUEZ (Shield No. 6315), POLICE OFFICER
FRANK CONTALDI (Shield No. 250), POLICE
OFFICER DANIEL AREVALO (Shield No. 18827),
POLICE OFFICER BRIAN McGILL (Shield No.
23517), POLICE OFFICER DANIEL TRAYLOR
(Shield No. 2758), POLICE OFFICER KWADWO
OPOKUDURO (Shield No. 5915), LIEUTENANT
LAWRENCE WANG
and JOHN/JANE DOE 1-10 (the names being fictitious
as their identities are unknown),

               Defendants.
------------------------------------------------------------------- x

Dkt No. 20-CV-04310 (ALC)(DCF)

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Abass Toure ("Mr. Toure" or "Plaintiff") is an African American male resident of New York County in the City and State of New York.

7. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

8. Police Officer Andrew Aiello, Shield No. 21442 (" Defendant Aiello"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Aiello is sued in his individual and official capacities.

9. Police Officer Jesse Zalewski, Shield No. 16876 ("Defendant Zalewski"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Zalewski is sued in his individual and official capacities.

10. Police Officer Sheldon Elliot, Shield No. 21027 ("Defendant Elliott"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Elliott is sued in his individual and official capacities.

11. Police Officer Christian Rodriguez, Shield No. 6315 ("Defendant Rodriguez"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Rodriguez is sued in his individual and official capacities.

12. Police Officer Frank Contaldi, Shield No. 250 ("Defendant Contaldi"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Contaldi is sued in his individual and official capacities.

13. Police Officer Daniel Arevalo, Shield No. 18827 ("Defendant Arevalo"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Arevalo is sued in his individual and official capacities.

14. Police Officer Brian McGill, Shield No. 23517 ("Defendant McGill), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant McGill is sued in his individual and official capacities.

15. Police Officer Daniel Traylor, Shield No. 2758 ("Defendant Traylor"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Traylor is sued in his individual and official capacities.

16. Police Officer Kwadwo Opokuduro, Shield No. 5915 ("Defendant Opokuduro"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Traylor is sued in his individual and official capacities.

17. Lieutenant Lawrence Wang, ("Defendant Wang"), at all times relevant herein, was a lieutenant, employee and agent of the NYPD. Defendant Wang is sued in his individual and official capacities.

18. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

19. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

20. At all times relevant herein, all individual defendants (collectively "Defendants") were acting under color of state law.

## STATEMENT OF FACTS

21. Mr. Toure's brother is an African American male paralyzed from the waist down and uses a wheelchair to get around.

22. On or about October 4, 2019, Mr. Toure's brother, Amara Toure ("Amara") was in the vicinity of East 115th Street and 2nd Avenue, New York, New York.

23. Mr. Toure's brother was unarmed.

24. Defendant Zalewski and other Individual Defendants roughly and physically searched Amara and knew that he was unarmed and had no contraband on him.

25. Despite the fact that that the Individual Defendants knew that Amara had no weapons or other contraband, police officers handcuffed his hands behind his back.

26. Upon arriving to the scene and seeing his wheelchair bound brother handcuffed behind his back, Mr. Toure asked the police officers why they were arresting his brother.

27. The Individual Defendants provided no answer to Mr. Toure.

28. Defendant Wang told Mr. Toure to "stay there."

29. Mr. Toure complied with Defendant Wang's order and again asked what was happening to his brother.

30. Mr. Toure had committed no crime.

31. There was no legal basis to use any force against Mr. Toure.

32. Mr. Toure had complied with all lawful orders.

33. Even though Mr. Toure complied with Defendant Wang's order, Defendant Aiello and Defendant Elliott began pushing Mr. Toure backwards.

34. Defendant Aiello and Defendant Elliot had no right to push Mr. Toure.

35. When Mr. Toure attempted to walk away from Defendant Elliott and Defendant Aiello, Defendant Aiello continued pushing Mr. Toure.

36. Mr. Toure was walking away from the location of his brother and the officers.

37. Defendant Aiello continued following Mr. Toure and forcefully pushing Mr. Toure.

38. Mr. Toure told Defendant Aiello not to push him or touch him.

39. Defendant Aiello shoved Mr. Toure.

40. Defendant Wang then ordered his officers to handcuff Mr. Toure.

41. Defendant Wang, Defendant Aiello, Defendant Elliott, Defendant Rodriguez, Defendant Contaldi, Defendant Arevalo, Defendant McGill, Defendant Traylor, Defendant Opokuduro all surrounded Mr. Toure.

42. Several of the individual defendants including Defendant Wang, Defendant Elliott, and Defendant Aiello physically restrained Mr. Toure, pulling his arms behind his back.

43. Despite the fact that Mr. Toure was physically restrained by multiple officers, Defendant Zalewski began repeatedly punching Mr. Toure.

44. Mr. Toure's arms were being held by some of the individual defendants as Defendant Zalewski repeatedly punched at Mr. Toure.

45. Defendant Zalewski's punches landed on Mr. Toure's face.

46. There was no reason for Defendant Zalewski or any other police officer to punch Mr. Toure during his arrest.

47. The punches were obvious to all around and the civilian bystanders were shouting that the Defendants were punching him.

48. The individual defendants were close enough to stop the assault of Mr. Toure, but none of the individual defendants intervened.

49. Mr. Toure did not attack any officer.

50. Defendants retaliated against Plaintiff for exercising his First Amendment right to freedom of speech.

51. Despite the Defendants knowing that Mr. Toure was restrained as he was repeatedly struck with upper cuts, none of the Defendants stopped the punches.

52. Defendants had the opportunity to stop the excessive force against Mr. Toure, but none of them did.

53. Defendants then forcefully took Mr. Toure down to the ground.

54. Mr. Toure was not resisting or presenting any threat to the Defendants.

55. As Mr. Toure lay on the ground with his hands handcuffed behind his back, Defendant Zalewski forcefully stomped on the back of Plaintiff's head stomping the left side of Mr. Toure's face into the ground.

56. Mr. Toure was bleeding heavily from the left side of his face.

57. Plaintiff requested to be taken to the hospital to be treated for his injuries.

58. Despite the obvious injuries, no ambulance was called to the scene.

59. Mr. Toure's brother objected to how the Individual Defendants treated and arrested Mr. Toure.

60. Defendant Traylor told the other officers surrounding Amara to take Amara off the wheelchair and put him on the floor.

61. Defendant Traylor had Amara's face pressed into the sidewalk, which Defendant Traylor said was nasty and smelled.

62. Defendant Traylor laughed and said that the wheelchair was fake.

63. Defendant Traylor kept Amara pressed to the ground.

64. Amara kept asking Defendant Traylor to help him off the ground because Defendant Traylor was hurting him, but Defendant Traylor refused to help him.

65. Amara asked if he was under arrest.

66. Defendant Traylor told him that he was not under arrest and would be transported to the hospital.

67. Amara repeatedly asked to have the handcuffs handcuffed in front of his body because of how much pain he was in.

68. Defendant Traylor refused telling him to move his body in different ways.

69. Each time, Amara told Defendant Traylor and Police Officer Jane Doe # 1 ("Jane Doe") that the handcuffs were too tight and he could not move his body that way. Both Defendant Traylor and Jane Doe knew that Amara was in a wheelchair and had seen that his legs were paralyzed.

70. Despite the fact that the police were not intending to arrest Amara and he posed no threat to run away or hurt anyone, Defendants refused to front cuff Amara.

71. Amara asked to call his mother.

72. Defendant Traylor refused to let him contact his mother, telling him that he could only call someone if he was being arrested.

73. Defendants refused to loosen the handcuffs, front cuff him, or uncuff him even though they were not arresting him.

74. As Defendants were restraining Amara, Defendant Traylor said, if your hand breaks it breaks.

75. As Amara was being taken away by EMTs, Defendant Traylor said, I wanted to hit him so hard.

76. To conceal their unlawful assault of Plaintiff, Defendants falsely arrested Mr. Toure.

77. To conceal their unlawful assault, some of the Individual Defendants positioned themselves to obstruct cameras from recording the incident.

78. To conceal their unlawful assault, some of the Individual Defendants conspired to fabricate a basis for arresting Plaintiff.

79. Plaintiff was instead transported in handcuffs to the police precinct.

80. Defendant Traylor began calling Amara a punk.

81. Defendant Traylor, referring to Amara, said, "I want to hit him so hard."

82. At the precinct, Plaintiff again requested medical attention.

83. One of the defendants who is a supervisor approached Mr. Toure and told him that it did not have to go like that.

84. Plaintiff bleeding profusely from his head and eye again requested medical attention, but the supervisor asked what he needed it for.

85. Mr. Toure said in sum and substance, "Can't you see that I am bleeding?"

86. The supervisor responded that it was just a scratch.

87. Plaintiff said in sum and substance, "No, I am still bleeding and I also have a headache."

88. Several hours later an ambulance finally came to the precinct to evaluate Mr. Toure.

89. Plaintiff was transported to the hospital for his injuries.

90. Plaintiff was then transported back to the precinct where they processed his arrest.

91. Despite the incident being captured on video, Defendant Aiello fabricated a basis to arrest Mr. Toure.

92. Defendant Aiello falsely claimed that Mr. Toure was standing closely to where his brother was being arrested.

93. In fact, Plaintiff was not standing near his brother.

94. Defendant Aiello falsely claimed that Plaintiff shoved him.

95. Defendant Aiello lied about Mr. Toure's actions to conceal his and his fellow officer's illegal actions.

96. Defendant Aiello's false statements are contradicted by the video of Defendants' assault of Mr. Toure.

97. Defendant Aiello forwarded this false information to the New York County District Attorney's Office.

98. Mr. Toure was arraigned on these false charges.

99. Defendant Aiello fabricated evidence against Mr. Toure.

100. Plaintiff suffered a loss of liberty as a result of these charges.

101. Plaintiff spent a night in police custody.

102. Plaintiff had to appear in court numerous times before the prosecutor agreed to adjourn the case in contemplation of dismissal.

103. All charges were dismissed against Mr. Toure.

104. As a result of this incident, Plaintiff suffered serious injuries to his face.

105. Mr. Toure's left side of his face was swollen and bleeding.

106. Mr. Toure had a migraine as a result of the assault.

107. Mr. Toure had trouble with his vision in his left eye as a result of this assault.

108. Plaintiff missed work as a result of these injuries.

109. Mr. Toure has scarring on the left side of his face from where his face was stomped into the concrete ground.

110. As a result of the beating, Mr. Toure had blurry vision in his left eye.

111. Mr. Toure suffered following the incident and feels fear, embarrassment, humiliation, emotional distress, frustration, anxiety, and loss of liberty.

112. Within ninety days following the occurrence of the incidence complained of in this Complaint, Plaintiff filed a written Notice of Claim with Defendant City of New York pursuant to General Municipal Law 50e.

113. Thirty days since the filing thereof have elapsed without adjustment or payment of plaintiff's claim.

## FIRST CLAIM
### False Arrest

114. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

115. The Individual Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

116. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### State Law False Imprisonment and False Arrest

117. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

118. By their conduct, as described herein, the individual defendants are liable to Plaintiff for falsely imprisoning and falsely arresting Plaintiff.

119. Plaintiff was conscious of his confinement.

120. Plaintiff did not consent to his confinement.

121. Plaintiff's confinement was not otherwise privileged.

122. Defendant City of New York, as an employer of the Individual Defendant officers, is responsible for their wrongdoing under the doctrine of respondeat superior.

123. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

## THIRD CLAIM
### Failure to Intervene

124. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

125. Those Individual Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

126. Accordingly, the Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

127. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
### Excessive Force

128. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

129. The Individual Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 USC 1983.

130. The Individual Defendants have deprived Plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United

States Constitution, in that the Individual Defendants used excessive and unreasonable force in effecting the arrest of Plaintiff.

131. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## Retaliatory Prosecution

132. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

133. Plaintiff exercised his First Amendment right to freedom of speech when asking what the police were doing to his brother.

134. In retaliation, Plaintiff was arrested and prosecuted without any legal justification or probable cause.

135. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## State Law Assault and Battery

136. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

137. By their conduct, as described herein, the Individual Defendants are liable to Plaintiff for having assaulted and battered him.

138. Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under the doctrine of respondeat superior.

139. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all Defendants, jointly and severally;

(b) Punitive damages against the Individual Defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: May 24, 2021
New York, New York

BRUSTEIN LAW, PLLC

_____/s/_____
Evan Brustein
299 Broadway, 17th Floor
New York, NY 10007
(212) 233-3900

_____/s/_____
Marion Conde da Silveira
CONDE LAW FIRM, PLLC
299 Broadway, 17th Floor
New York, New York 10007
(917)470-2837

*Attorneys for Plaintiff*